Michael DiNardo, Esq. (SBN 216991)
YK Law, LLP
445 S. Figueroa Street, Suite 2280
Los Angeles, CA 90071
Tel: (213) 260-9693
Fax: (213) 529-3044
MDiNardo@yklaw.us

| | |
|---|---|
| William H. Hurd, Esq. | Edward J. Longosz, II, Esq. |
| (Pro Hac Vice to be filed) | (Pro Hac Vice to be filed) |
| Eckert Seamans Cherin & Mellott, LLC | Eckert Seamans Cherin & Mellott, LLC |
| 919 East Main Street, Suite 1300 | 1717 Pennsylvania Ave, NW, Ste 1200 |
| Richmond, VA 23219 | Washington, DC 20006 |
| Tel: (804) 788-9638 | Tel: (202) 659-6600 |
| Fax: (804) 698-2950 | Fax: (202) 659-6699 |
| whurd@eckertseamans.com | elongosz@eckertseamans.com |

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1776 PROJECT FOUNDATION,<br>    Plaintiff,<br><br>    v.<br><br>ALBERTO M. CARVALHO, Superintendent of the Los Angeles Unified School District (LAUSD), SCOTT SCHMERELSON, President of the Los Angeles Unified School District (LAUSD) Board of Education, and BOARD OF EDUCATION OF THE LOS ANGELES UNIFIED SCHOOL DISTRICT,<br>    Defendants. | No: 2:26-cv-00548<br><br>**COMPLAINT** |

# INTRODUCTION

**"Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality."**

***Hirabayashi v. United States*, 320 U.S. 81, 100 (1943).**

1.      Racial equality is not a novel concept. Whatever obstacles this ideal may have been forced to overcome, it is now firmly rooted in the hearts and minds of most Americans. But not in the Los Angeles Unified School District (the "LAUSD" or "District").

2.      Instead, the District engages in – and publicly touts – a program of overt discrimination against a new minority: White students. And it is not just students of European descent who are the victims of the District's poor treatment. Students of Middle Eastern descent are also part of the disfavored group, as are others who fall on the wrong side of the District's bizarre racial and ethnic line-drawing.

3.      Here is what the District does: First, *individual students* are racially classified, based on whether they qualify as "HBAO" – meaning "Hispanic, Black, Asian and Other non-Anglo" (with the District using its own peculiar definition of these categories). Then, each *public school* is racially classified, based on whether more than 70 percent of its resident student population qualify as HBAO. Schools meeting this percentage criterion are labeled "PHBAO," meaning "Predominantly Hispanic, Black, Asian and Other non-Anglo." The remainder are "non-PBHAO."

The District then affords PHBAO-school students preferences unavailable to students at schools that lack that designation.

4. In today's Los Angeles, over 600 public schools qualify as PHBAO. Fewer than 100 do not. So, the non-PHBAO schools are a minority. And, for students who attend non-PHBAO schools, the District provides inferior treatment and calculated disadvantages. For example:

- In PHBAO schools, class sizes are smaller, thereby allowing more individual attention and improved learning and earning outcomes. PHBAO schools have student-teacher ratios no greater than 25-to-1. In non-PHBAO schools, student-teacher ratios can soar as high as 34.5-to-1.

- In PHBAO schools, parents have a greater opportunity for involvement in their child's education. In PHBAO schools, parents are guaranteed at least two parent-teacher conferences per year, but not in non-PHBAO schools.

- In PHBAO schools, there is more school staffing with additional administrators and teachers, thereby allowing more individual attention and education, with improved learning and earning outcomes. Students in non-PHBAO schools receive no such favorable treatment and advantage.

- In PHBAO schools, students applying to a prestigious magnet school automatically receive extra points on their application. Students in non-PHBAO schools receive no such advantage. Thus, the magnet school

admissions process is deliberately skewed against some applicants based simply on the racial classification of the school they attend.

5. Given the District's known policies of overt racial discrimination, it is likely that the District also implements other discriminatory policies as well. The LAUSD channels opportunities, preferences, funding, and outreach primarily to specific racial groups, while systematically excluding or failing to allow other students who similarly could benefit from the same favorable academic support.

6. None of this is constitutional. None of it can be allowed to stand. It is to vindicate the American ideal of racial equality – and end the unlawful discrimination now afoot in the Los Angeles County public schools – that the 1776 Project Foundation brings this lawsuit.

## JURISDICTION AND VENUE

7. The federal law claims arise under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

8. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). Declaratory relief is authorized by 28 U.S.C. §§ 2201-02.

9. Venue is proper in this District under 28 U.S.C. § 1391(6) because Los Angeles Unified School District is located in this District, and a substantial part of the events or omissions giving rise to this claim occurred here.

10. The state-law claim arises under Article I, § 31 of the California Constitution. Supplemental jurisdiction over Plaintiff's state-law claim exists under 28 U.S.C. § 1367(a), because that claim is so related to the federal claims that it forms part of the same case or controversy.

## PARTIES

11. Plaintiff, 1776 Project Foundation ("1776 Project"), is a nonprofit organization. Its mission is to advocate for the principle of equal rights for all by opposing race-based discrimination in public education, and to create and disseminate policies that will promote academic achievement and revitalize the education system for families and students throughout the country.

12. The 1776 Project has one or more members who reside in Los Angeles Unified School District and who have children currently enrolled in the District's schools. Because these children attend non-PHBAO schools, they are denied the benefits available to children who attend PHBAO schools.

13. Parent "A" is a parent of two minor children who attend a non-PHBAO school. Parent A is a member of the 1776 Project. Parent A and Parent A's children belong to a racial group that is disfavored by the District (*i.e.,* not a HBAO group). Because the children attend a non-PHBAO school, the children suffer from the racially discriminatory policies of the District.

14. The children of Parent A applied for and were denied certain benefits

including placement in a magnet program because of the discriminatory policy of the District.

15. The children of Parent A are not afforded a 25:1 favorable student/teacher ratio, not afforded additional school administrators and teachers, not included in the classification of students who receive additional points towards selection for a magnet program within the District, nor provided with the two parent-teacher conferences per year which applies to PHBAO schools. The PHABO preference program discriminates against these children because of race in both purpose and effect.

16. In addition to the deprivation of tangible benefits, the children of Parent A suffer from the stigma of being classified as part of a governmentally disfavored racial group.

17. The children of Parent A would have standing to bring this action in their own names through Parent A as their next friend. *See Regents of Univ. of Cal. v. Bakke,* 438 U.S. 265, 280-82 n. 14 (1978) (finding that an applicant was injured and had standing because the university's racially discriminatory admissions policy precluded the applicant from competing for all places in the entering class).

18. Parent A would also have standing to bring this action in his/her own name. The "primary role of the parents in the upbringing of their children is now established beyond debate." *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972). That

role is broad enough to give parents standing to bring this action, whether in their own name and/or as next friends for their minor children.

19. Parent A is identified here by pseudonym due to a genuine fear of retaliation at the hands of the District, the District's employees, or others, if his/her identity were to be made known.

20. The 1776 Project has standing to bring this action on behalf of their member parents, including Parent A, because: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

21. Specifically, the 1776 Project has standing to bring this claim on behalf of its members with school-aged children who are forced to compete in an unconstitutionally race-based system. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718-19 (2007) (where "group's members have children in the district's elementary, middle, and high schools" group had standing to challenge schools' "race-based program" because "being forced to compete in a race-based system that may prejudice the plaintiff" is "an injury that the members of [the group] can validly claim on behalf of their children.").

22. Defendant Alberto M. Carvalho is a California resident and the Superintendent of the Los Angeles Unified School District, sued in his official capacity. He exercises ultimate administrative authority over the District's schools, students and programs, including the PHBAO program, and is responsible for implementing and enforcing the policies and programs challenged in this action.

23. Defendant Scott Schmerelson is a California resident and the President of the Los Angeles Unified School District Board of Education, and sued in his official capacity. He participates in establishing and approving policies governing the District's programs, including those challenged in this action, and oversees their implementation alongside other Board members.

24. The Board of Education of the Los Angeles Unified School District ("LAUSD" or the 'District') is a governmental body charged under California law with the responsibility of operating the public school system in Los Angeles County, California.

25. LAUSD receives substantial federal funding, making it subject to the nondiscrimination mandates of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

**FACTUAL ALLEGATIONS**

25. The LAUSD is the largest school district in California, and second largest in the Nation, responsible for educating over 600,000 students in grades K-

12, with over 200 publicly chartered magnet schools, and over 600 PHBAO schools and under 100 non-PHBAO schools.

26. The LAUSD classifies Black, Hispanic, and Asian children as "minority" students and refers to them, repeatedly, as "Hispanic," "Black," "Asian" and "Other non-Anglo" and groups them together with the term "HBAO." The District then characterizes some schools as predominantly HBAO (or "PHBAO") and affords their students preferences unavailable to students at schools that lack that designation (*i.e.* predominately "White" schools). LAUSD's use of the term "Other non-Anglo" translates into what LAUSD considers as other than "White." "White" is then defined by LAUSD to include students of Middle Eastern heritage or descent even though such students would not be typically regarded as "Anglo." "White" students in the District are a slim minority (about 10%), and many are of Middle Eastern heritage or descent. According to LAUSD's publicly available data and dashboard information, only 82 of 783 K-12 schools in the District lack the PHBAO designation.

27. LAUSD's non-PHBAO schools and students attending those schools are denied preferences on the basis of the racial classification of those schools as non-PHBAO schools.

28. Schools designated PHBAO are provided more favorable student/teacher ratios than non-PHBAO schools. For example, for the 2025-2026

school year, the District set the average ratio for many grades at 25-to-1 for PHBAO schools and 34.5-to-1 for other schools. These are statistical disparities that are race based.

29. Additional race-based benefits provided to schools with the PHBAO label include that students in such schools receive additional points toward selection for a magnet program within the District. For years, the LAUSD has undertaken and engaged in the practice of denying certain educational opportunities to students based on race.

30. Additional race-based benefits provided to students in schools with the PHBAO label include that students (and their parents) in such schools are provided two parent-teacher conferences per year, whereas, no such requirement applies in schools that are non-PHBAO.

31. For the 2024 budget, the District has allocated a disproportionate budget amount to the PHBAO schools in comparison with non-PHBAO schools to fulfill these discriminatory practices, including but not limited to additional staffing and administration allocated to PHBAO schools.

32. Students attending non-PHBAO schools are denied and directly blocked from these benefits because of the racial composition of their school attendance zone, which detrimentally impacts the quality of the educational experience and directly damages these students. This unconstitutional practice has

been in effect for several decades without justification.

33. The programs are designed and intended only for students of particular races and are racially exclusionary in their very design and operation.

34. The programs are racially discriminatory in their purpose and effect.

35. Given the District's penchant for racial discrimination in the PHBAO program, it is likely that there are other racially discriminatory policies operated by the District.

36. The LAUSD cannot justify providing and administering the PHBAO program to discriminate against some students based on race and favor other students based on race. *See, e.g., Yick Wo v. Hopkins,* 118 U.S. 356, 373-74 (1886)("Though the law itself be fair on its face and impartial in appearance, yet, if it applied and administered by public authority with an evil eye and unequal hand, so as practically to make unjust and illegal determinations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.").

37. The District's purpose is to create a racially-dictated environment in these programs and to give preferential treatment to certain students because of their race.

38. Racial classification by Defendants – even if well-intentioned – is unconstitutional under the Equal Protection Clause of the United States Constitution

and Article I, Section 31, of the California Constitution. It also violates Title VI of the Civil Rights Act of 1964.

39. The 1776 Project has one or more members whose children would benefit from these programs but have not received (and reasonably believe they will never receive) the same outreach or invitation afforded to PHBAO-school students. Even where these members have learned about the programs, the District denies their children the opportunity to compete for participation and placement.

40. As a result, 1776 Project members have been effectively denied the opportunity to participate in publicly funded education programs because of race, and inevitably damaged.

41. Absent injunctive relief, Defendants will continue implementing these race-based programs, infringing on the constitutional and statutory rights of the 1776 Project members and other students in the District.

## CLAIMS FOR RELIEF

### First Cause of Action
### Violation of the Equal Protection Clause of the Fourteenth Amendment
### (42 U.S.C. § 1983)

42. Plaintiff realleges and incorporates by reference all preceding paragraphs.

43. Under the Fourteenth Amendment, no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

44. Defendants, acting under color of state law, have implemented and enforced programs that differentiate among students on the basis of race, advertise opportunities, preferences and services for PHBAO-school students only, provide services designed and intended "for" particular racial groups, and disadvantage similarly situated non-PHBAO-school students.

45. The LAUSD race-based policies violate the Fourteenth Amendment's Equal Protection Clause because they distribute benefits and burdens on the basis of race without substantive justification. The benefits of public education "must be made available to all on equal terms." *Brown v. Board of Educ.*, 247 U.S. 483, 493 (1954). And public education must do so "without regard to any differences of race, or color, or of nationality." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,* 600 U.S. 181, 206 (2023). Any exception to the federal Constitution's demand for equal protection must survive strict scrutiny.

46. When government implements racially discriminatory policies, those policies are subject to strict scrutiny, which is to say they cannot survive unless the government can demonstrate that the policies are narrowly tailored to achieve a compelling government objective.

47. Defendants cannot show that the race-based policies, as alleged herein, meet this demanding standard.

48. Defendants' actions thus violate the Equal Protection Clause of the Fourteenth Amendment.

## Second Cause of Action
## Violation of Title VI of the Civil Rights Act of 1964
## (42 U.S.C. § 2000d)

49. Plaintiff realleges and incorporates by reference all preceding paragraphs.

50. Title VI prohibits any program or activity receiving Federal financial assistance from discriminating on the basis of race. 42 U.S.C. § 2000d.

51. LAUSD receives substantial federal funding. Despite this, it maintains, funds, and operates the schools and programs in a way that selectively benefits PHBAO-school students and that are promoted and perceived as racially exclusive, effectively discriminating against students who attend non-PHBAO schools.

52. By administering or allowing race-based education programs, Defendants violate Title VI.

53. The discriminatory acts described above treat non-HBAO-school students less favorably on account of race, thereby contravening the plain text and core purpose of Title VI.

## Third Cause of Action
## Violation of California Constitution, Article I, Section 31
## (Proposition 209)

54. Plaintiff realleges and incorporates by reference all preceding paragraphs.

55. Under Article I, Section 31, of the California Constitution (adopted as Proposition 209), "[t]he state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race . . . in the operation of public education[.]"

56. Defendants operate public-education programs that explicitly grant preferential treatment to PHBAO-school students, thereby excluding or discouraging participation by non-HBAO-school students solely on the basis of race.

57. Defendants' race-conscious schools and administrators and associated programs thus violate California Constitution, Article I, Section 31.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in its favor and grant the following relief:

1. A declaration that Defendants' policies and practices and its associated programs violate the Equal Protection Clause of the Fourteenth Amendment, Title VI, and Article I, Section 31, of the California Constitution;

2. A permanent injunction prohibiting Defendants – and all persons acting in concert with them – from using race preferences in any manner in operating, funding, advertising, or admitting students into school programs, and requiring Defendants to provide notice and equal outreach to all eligible students regardless of race;

3. An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, California law, and any other applicable authority;

4. Any other and further legal or equitable relief the Court deems just and proper.

Dated: January 20, 2026　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　  /s/Michael A DiNardo　　　　
　　　　　　　　　　　　　　　　　　　Michael DiNardo, Esq.
　　　　　　　　　　　　　　　　　　　YK Law, LLP
　　　　　　　　　　　　　　　　　　　445 S. Figueroa Street, Suite 2280
　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90071

　　　　　　　　　　　　　　　　　　　William H. Hurd, Esq.
　　　　　　　　　　　　　　　　　　　(Pro Hac Vice to be filed)
　　　　　　　　　　　　　　　　　　　Eckert Seamans Cherin & Mellott, LLC
　　　　　　　　　　　　　　　　　　　919 East Main Street, Suite 1300
　　　　　　　　　　　　　　　　　　　Richmond, VA 23219

　　　　　　　　　　　　　　　　　　　Edward J. Longosz, II, Esq.
　　　　　　　　　　　　　　　　　　　(Pro Hac Vice to be filed)
　　　　　　　　　　　　　　　　　　　Eckert Seamans Cherin & Mellott, LLC
　　　　　　　　　　　　　　　　　　　1717 Pennsylvania Ave, NW, Ste 1200
　　　　　　　　　　　　　　　　　　　Washington, DC 20006

　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff 1776 Project Foundation